1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL CLARK,                              )
                                            )          Case No. 2:09-cv-00141-JCM-PAL
                        Plaintiff,          )
                                            )      **ORDER AND REPORT OF FINDINGS**
vs.                                         )         **AND RECOMMENDATION**
                                            )
ADRIAN GUERRERO, et al.,                    )
                                            )
                        Defendants.         )
_____)

13        This matter is before the court on Plaintiff Michael Clark's Amended Complaint (Dkt. #88),

14   which was referred to the undersigned for screening under 28 U.S.C. § 1915(a).  *See* Order (Dkt. #101).

15   Plaintiff is proceeding in forma pauperis and pro se.  The court has considered the Amended Complaint.

16                                      **BACKGROUND**

17        This case has a complicated procedural history, and there has been considerable delay in this

18   case as a result.  In December 2008, Plaintiff Clark filed a complaint in Nevada state court, alleging

19   claims under 42 U.S.C. § 1983 against Defendant Adrian Guerrrero, a prison official at Southern Desert

20   Correctional Center ("SDCC").  On January 21, 2009, the Nevada Attorney General's Office removed

21   this case to this court.  *See* Notice of Removal (Dkt. #1).  On January 26, 2009, Guerrero filed a Motion

22   to Extend Time (Dkt. #4), which the court granted in an Order (Dkt. #4), allowing him until March 12,

23   2009, to respond to Plaintiff's complaint.  On March 12, 2009, Guerrero filed a Motion to Dismiss

24   (Dkt. #8).  On March 27, 2009, Plaintiff filed a Motion for Preliminary Injunction (Dkt. #13), and on

25   May 4, 2009, Plaintiff filed a Motion for Summary Judgment (Dkt. #24).  These Motions were denied

26   by the district judge.  *See* Orders (Dkt. ##40, 43, 44).  On September 10, 2009, the court entered a

27   Scheduling Order (Dkt. #47).  The parties engaged in discovery and related motion practice, and on

28   / / /

1    April 28, 2010, the district judge entered the Pretrial Order (Dkt. #73), setting this matter for trial on

2    October 18, 2010.

3         Subsequently, on September 28, 2010, Chief Judge Hunt consolidated a related case, *Clark v.*

4    *Williams,* Case No. 10-cv-00736-RLH-RJJ, with this case and vacated the trial date. *See* Order to

5    Consolidate (Dkt. #80).  Judge Hunt's Order screened Plaintiff's Complaint in *Clark v. Williams* and

6    directed Plaintiff to file an amended complaint stating all the claims from both cases.  *Id.*  On

7    December 2, 2010, Plaintiff filed his Amended Complaint.  On November 21, 2011, the Clerk of Court

8    entered a Notice (Dkt. #94), advising the parties that this case would be dismissed for failure to

9    prosecute.  Plaintiff filed a Motion to Set Trial (Dkt. #95) on December 21, 2011.  This case was

10   dismissed in error on December 30, 2011.  On April 13, 2012, the court re-opened the case, directing

11   Defendants to file a response Plaintiff's Motion to Set Trial.  *See* Order (Dkt. #98).

12        Defendants complied on April 27, 2012, and their Response asserts the court did not screen

13   Plaintiff's original complaint in compliance with 28 U.S.C. § 1915A.  Additionally, Defendants

14   contend that Plaintiff's Amended Complaint does not comply with the Order to Consolidate because it

15   re-alleges claims that were previously dismissed in *Clark v. Williams*.  On May 5, 2012, the district

16   judge entered an Order (Dkt. #101), in which he found the initial error, later compounded, occurred

17   when defense counsel: (a) sought an extension of time to file a responsive pleading; and (b) filed a

18   responsive pleading.  *See generally* Dkt. ##3, 8.  "By doing so, the attorney general rendered any

19   screening order by the court superfluous, and thus no screening order was entered."  Order (Dkt. #101)

20   at 2:2-3.  The Joint Status in Removal (Dkt. #6) explicitly provides, "The parties state there are no other

21   matters at this time requiring the Court's attention."  Joint Status (Dkt. #6) at 3:3-4.  With this

22   background, the district judge referred the Amended Complaint to the undersigned to screen pursuant to

23   28 U.S.C. § 1915A.

## DISCUSSION

**I.    Screening Standard Under 28 U.S.C. § 1915A.**

26        Federal courts must conduct a preliminary screening in any case in which a prisoner seeks

27   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

28   § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are

1   frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from
2   a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  Pro se pleadings,
3   however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir.
4   1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that
5   a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged
6   violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42,
7   48 (1988).

8       In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation
9   Reform Act of 1995 ("PLRA"), a federal court must dismiss a prisoner's claim, "if the allegation of
10  poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may
11  be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.
12  § 1915(e)(2).  Dismissal of an amended complaint for failure to state a claim upon which relief can be
13  granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same
14  standard under § 1915 when reviewing the adequacy of an amended complaint.  When a court dismisses
15  a amended complaint under § 1915(e), the plaintiff should be given leave to amend with directions as to
16  curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be
17  cured by amendment.  *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

18      Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*
19  *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim
20  is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that
21  would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making
22  this determination, the court takes as true all allegations of material fact stated in the amended
23  complaint, and the court construes them in the light most favorable to the plaintiff.  *See Warshaw v*
24  *Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).   Allegations of a pro se complainant are held to less
25  stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9
26  (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  While the standard under Rule
27  12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels
28  and conclusions.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  A formulaic

1  recitation of the elements of a cause of action is insufficient.  *Id.; see also Papasan v. Allain*, 478 U.S.

2  265, 286 (1986).

3       All or part of an amended complaint filed by a prisoner may therefore be dismissed *sua sponte* if

4  the claims lack an arguable basis either in law or in fact.  This includes claims based on legal

5  conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of

6  infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual

7  allegations (e.g., fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319, 327-28

8  (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

9  **II.    Plaintiff's Amended Complaint (Dkt. #88).**

10      Plaintiff's Amended Complaint names Guerrero, a prison official at SDCC, where Plaintiff was

11  an inmate.[1]  Plaintiff alleges that on June 30, 2008, he visited the medical department at SDCC, and

12  while waiting in line, became dizzy and started to fall.  Guerrero "tackled" Plaintiff, forcing Plaintiff to

13  stand in line.  Guerrero called for back up, stating Plaintiff refused to obey orders and was causing a

14  disturbance.  Plaintiff contends the back up officers arrived and dragged him to the "hole," or the

15  administrative segregation housing unit.  Plaintiff alleges Guerrero wrote a false report about the

16  incident, claiming that Plaintiff assaulted Guerrero.  As a result of the report, Plaintiff alleges he was

17  required to spend twenty-four months in disciplinary segregation.

18      The Amended Complaint also names Defendant Brian Williams, the warden at High Desert

19  State Prison ("HDSP"), where Plaintiff was incarcerated after being transferred from SDCC.  Plaintiff

20  asserts that between August 16, 2008, and December 9, 2009, Warden Williams "deliberately withheld

21  evidence and statements that proved the Plaintiff's innocence" regarding the incident with Guerrero.

22  He contends the grievance he filed against Guerrero was not routed to the Office of the Inspector

23  General for review as required by the Nevada Department of Corrections' Administrative Regulations.

24  Plaintiff asserts Warden Williams attempted to delay litigation and punish Plaintiff.  Plaintiff contends

25  that "[i]n retaliation," Warden Williams and prison staff "decided to harm and discourage the Plaintiff

26  presueing [sic] to file litigation."

27

28          [1]Plaintiff is no longer incarcerated.  *See* Notice of Change of Address (Dkt. #93).

4

1    Plaintiff also alleges that he filed grievances of prison staff misconduct against five different

2    staff members, including four grievances against caseworker Russell Perry, but Warden Williams did

3    not submit any of the grievances for investigation of misconduct.

4        **A.    Excessive Force Claim Against Defendant Guerrero.**

5        Plaintiff attempts to state an excessive force claim under the Eighth Amendment against

6    Guerrero.  Both the United States Supreme Court and the Ninth Circuit have determined that Eighth

7    Amendment claims involving the use of force upon a prisoner must be evaluated to determine whether

8    the alleged conduct, if taken as true, was so excessive as to violate a prisoner's right to be free from

9    cruel and usual punishment.  *Whitley v. Albers,* 475 U.S. 312, 327 (1986); *Clement v. Gomez*, 298 F.3d

10   898, 903 (9th Cir. 2002).  When an inmate accuses prison staff of assault, harassment, or threatening

11   conduct, "the core judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or

12   restore discipline, or maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6-7

13   (1992); *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005).  In determining whether force is

14   excessive, the court should look to the "extent of the injury . . ., the need for application of force, the

15   relationship between that need and the amount of force used, the threat reasonably perceived by the

16   responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson*, 503

17   U.S. at 7 (internal citations omitted); *Martinez v. Stanford,* 323 F.3d 1178, 1184 (9th Cir. 2003).  There

18   is no need to show serious injury as a result of the force, but the lack of such injury is relevant to the

19   inquiry.  *Hudson,* 503 U.S. at 7-9; *Martinez*, 323 F.3d at 1184.  However, not every touch by a prison

20   guard gives rise to a federal claim.  *Hudson,* 503 U.S. at 7.

21       In his Order denying Guerrero's Motion to Dismiss, the district judge found Plaintiff stated an

22   excessive force claim for Rule 12(b)(6) purposes because Plaintiff alleged Guerrero tackled Plaintiff

23   while waiting in line at the medical department.  Plaintiff also contends he was dragged by other

24   corrections officers to the administrative segregation unit.  Accepting the allegations of an unprovoked

25   attack as true for purposes of screening, Plaintiff has stated an excessive force claim under the Eighth

26   Amendment.

27   / / /

28   / / /

1

      **B.**     **Plaintiff's Retaliation Claim Against Warden Williams.**

2           Plaintiff attempts to state a claim for retaliation against Warden Williams in violation of the

3 First Amendment. He contends the warden encouraged unidentified staff members to retaliate against

4 Plaintiff for filing grievances against Guerrero and other staff members at SDCC. Additionally,

5 Plaintiff claims that the warden deliberately indifferent to staff members' retaliatory conduct and

6 showed a reckless disregard for Plaintiff's safety. "A prisoner suing under 1983 for retaliation must

7 allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action

8 does not advance legitimate penological goals, such as preserving institutional order and discipline."

9 *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium); *Rhodes v. Robinson*, 408 F.3d

10 559, 567-58 (9th Cir. 2005). Such claims must be evaluated in light of the deference shown to prison

11 officials. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Vince v. Barrett*, 345 F.3d 1083, 1093

12 (9th Cir. 2003). The prisoner must submit evidence, either direct or circumstantial, to establish a link

13 between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt,* 65 F.3d at 807;

14 *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (court may consider timing of

15 events surrounding alleged retaliation as circumstantial evidence or retaliatory intent). Finally, the

16 prisoner must demonstrate that his First Amendment rights were actually chilled by the alleged

17 retaliatory action. *Rhodes,* 408 F.3d at 568 (explaining that, at the pleading stage, a prisoner is not

18 required to "demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue

19 civil litigation in order to perfect retaliation claim") (emphasis in original). *Resnick v. Hayes*, 213 F.3d

20 443, 449 (9th Cir. 2000).

21          Additionally, a supervisory official may be liable in his individual capacity for: (a) his own

22 culpable action or inaction in the training, supervision, or control of his subordinates; (b) his knowledge

23 of and acquiescence in the constitutional violations of his subordinates; or (c) conduct that shows a

24 reckless, callous, or deliberate indifference to the rights of others. *Menotti v. City of Seattle,* 409 F.3d

25 1113, 1149 (9th Cir. 2005) (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

26 Plaintiff alleges Warden Williams knew about prison staff's retaliatory conduct and did not act to

27 prevent it and that the warden encouraged staff to retaliate against Plaintiff,. However, the Amended

28 Complaint does not describe any specific conduct of Warden Williams or the unnamed members of the

1    prison staff.  The Amended Complaint contains a list of prison personnel and the grievances Plaintiff

2    filed against them and a list of pending federal cases Plaintiff has filed, but Plaintiff makes no claim in

3    connection with these lists.  He also alleges that Warden Williams "and staff decided to harm and

4    discourage" Plaintiff from pursuing litigation and that Williams allowed "staff to commit these acts

5    with no disregard [sic], sympathy, and no mercy," but the Amended Complaint does not describe what

6    "these acts" are or who committed them.

7          As the Ninth Circuit opined in *Hydrick v. Hunter*, the absence of specific allegations in

8    significant because, to establish liability under 42 U.S.C. § 1983, "a plaintiff must plead that each

9    Government-official defendant, through the official's own individual actions, has violated the

10   Constitution."  669 F.3d 937, 941 (9th Cir. 2012).  Even under the "deliberate indifference" theory of

11   liability, Plaintiff must still allege sufficient facts to "plausibly establish" Warden Williams'

12   "'knowledge of'" and "'acquiescence in'" the unconstitutional conduct of his subordinates. *Id.* (citing

13   *Starr v. Baca,* 652 F.3d 1202, 1206-07 (9th Cir. 2012)).  Plaintiff's Amended Complaint does not

14   describe specific retaliatory conduct by prison staff or plausibly establish the warden's knowledge of or

15   acquiescence in that undescribed conduct.  Moreover, Plaintiff has not identified any of the staff

16   members involved.  The allegations in the Amended Complaint are the sort of "bald" and "conclusory"

17   allegations the Supreme Court has determined are insufficient to establish individual liability under 42

18   U.S.C. § 1983.  *See Iqbal,* 129 S.Ct. at 1950-53; *c.f. Starr,* 652 F.3d at 1209-11, 1216 (discussing

19   plaintiff's "many allegations in the complaint detailing what [defendant] knew or should have known,

20   and what [defendant] did or failed to do" and finding these allegations plausibly suggested defendant's

21   'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates).

22         Plaintiff's retaliation claim was dismissed once with leave to amend by District Judge Hunt in

23   *Clark v. Williams,* Case No. 2:10-cv-736-RLH-RJJ, before that case was consolidated into this one.  *See*

24   Order (Dkt. #9) in *Clark v. Williams.*  Plaintiff's Amended Complaint has not cured the deficiencies

25   discussed in that Order.  Plaintiff has not alleged, with any particularity, the overt acts engaged in by

26   Warden Williams or other prison staff members that support his retaliation claim.  *See Jones v. Comm'y*

27   *Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (although the Federal Rules of Civil Procedure have

28   a flexible pleading policy, a complaint must give fair notice and state the

1   elements of the claim plainly and succinctly).  Given that Plaintiff has now had two opportunities to

2   cure this claim, the court will recommend dismissal of Plaintiff's retaliation claim.

3           **C.      Plaintiff's Fourteenth Amendment Claims Against Warden Williams.**

4           Plaintiff also attempts to state two Fourteenth Amendment claims against Warden Williams.

5   First, he asserts Warden Williams violated Plaintiff's due process rights by failing to mail Plaintiff's

6   grievance concerning the June 30, 2008, incident with Guerrero to the Office of the Inspector General

7   as required by the Nevada Department of Corrections' Administrative Regulations § 340.  Second,

8   Warden Williams violated Plaintiff's due process rights by unnamed withholding evidence and

9   statements during unspecified administrative proceedings.

10          The due process clause provides prisoners two separate sources of protection against

11  unconstitutional state disciplinary action.  *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003).  First,

12  a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest

13  in some "unexpected manner."  *Id.* (citing *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995)).  Second, a

14  prisoner may challenge a state action which does not restrain a protected liberty interest, but imposes

15  some "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

16  life."  *Id.* (citing *Sandin*, 515 U.S. at 484).  If the hardship is sufficiently significant, then the court must

17  determine whether the procedures satisfied due process.  *Id.*  "There is no single standard for

18  determining whether a prison hardship is atypical and significant, and the "condition or combination of

19  conditions or factors . . .  requires case by case, fact by fact consideration."  *Id.* (citing *Keenan v. Hall,*

20  83 F.3d 1083, 1089 (9th Cir. 1996)).

21          Plaintiff's has not stated a claim regarding Warden William' failure to mail Plaintiff's grievance

22  to the Office of the Inspector General.  As a general rule, failure to follow administrative procedures

23  does not create a claim for relief under 42 U.S.C. § 1983.  *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.

24  1988) (holding a state's unpublished policy statements establishing a grievance procedure did not create

25  a constitutionally-protected liberty interest).  More recently, in *Ramirez,* the Ninth Circuit held that

26  "inmates lack a separate constitutional entitlement to a specific grievance procedure."  334 F.3d at 860

27  (citing *Mann,* 855 F.2d at 640).  The court applied this holding to reject plaintiff's claimed loss of a

28  liberty interest in processing plaintiff's appeals.  *Id.; see also Teahan v. Wilhelm,* 481 F.Supp.2d 1115,

1120-21 (S.D. Cal. 2007) (applying *Ramirez* and *Mann* to bar prisoner's § 1983 First Amendment retaliation claim based on the prison's handling of grievance).  Because Plaintiff does not have a constitutionally-protected liberty interest in having his grievance sent to the Office of the Inspector General, this claim lacks the "necessary constitutional foundation," and it will be dismissed.  *Ramirez*, 334 F.3d at 860.  Because any amendment of this claim would be futile, it will be recommended this claim be dismissed.

Plaintiff also claim that Warden Williams withheld evidence and statements during disciplinary proceedings, and this led to Plaintiff receiving two years' time in administrative segregation.  Plaintiff has alleged no facts whatsoever to support this claim.  He has not shown the disciplinary action imposed was "atypical and significant" or set forth facts from which the court can determine that the administrative process he received violated his due process rights.  Plaintiff's conclusory allegations fail to state a claim for due process violation, and this claim will be dismissed with leave to amend.

### D.      Plaintiff's Sixth Amendment Claim Against Warden Williams.

Plaintiff alleges Warden Williams' conduct restricted Plaintiff's access to the court.  To establish a violation of the right of access to the courts, a prisoner must establish that he has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.  *See Lewis*, 518 U.S. 343, 349 (1996); *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis,* 518 U.S. at 348 (citation and internal quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (failure to show a non-frivolous claim was frustrated is "fatal" claim for denial of access) (citing *Lewis*, 518 U.S. at 353 & n.4); *Madrid*, 190 F.3d at 996.  The injury alleged must be an actual prejudice with respect to contemplated or existing litigation.  *See Lewis,* 518 U.S. at 353 (the actual injury requirement requires an inmate demonstrate that a non-frivolous legal claim was frustrated or impeded).  Plaintiff's conclusory allegation that Warden Williams "delayed litigation" does not meet this burden.  Additionally, Plaintiff lists five federal civil rights cases he filed beginning in 2009, demonstrating his ability to access the court.  Plaintiff's Sixth Amendment right of access claim will be dismissed, with leave to amend.

If Plaintiff chooses to amend the Amended Complaint, he is informed that the court cannot refer to a prior pleading (i.e., the Amended Complaint) in order to make the second amended complaint complete. This is because, as a general rule, a second amended complaint supersedes a first amended complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Local Rule 15-1 requires that an amended complaint be complete in itself without reference to any prior pleading. Once a plaintiff files a second amended complaint, the first amended complaint no longer serves any function in the case. Therefore, in a second amended complaint, as in a first amended complaint, each claim and the involvement of each defendant must be sufficiently alleged.

For all the foregoing reasons,

**IT IS ORDERED:**

1.     Plaintiff shall have until **September 7, 2012,** to file a second amended complaint, if he believes he can correct the noted deficiencies. The second amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the second amended complaint will no longer be before the court. The court has found Plaintiff stated a claim against Guerrero for excessive use of force in violation of the Eighth Amendment. If Plaintiff chooses to amend, he **must** re-allege that claim in the second amended complaint.

2.     Plaintiff shall clearly title the second amended complaint as such by placing the words "SECOND AMENDED COMPLAINT" on page 1 in the caption, and Plaintiff shall place the case number, **2:09-cv-00141-JCM-PAL**, above the words "SECOND AMENDED"in the space for "Case No."

3.     Plaintiff is expressly cautioned that if he does not timely file a second amended complaint in compliance with this Order, his claims against Warden Williams under the Fourteenth Amendment and Sixth Amendment will be dismissed.

4.     Given the age of this case, and in order to expedite this litigation, the Attorney General shall file a notice with the court indicating whether it will accept service of any second amended complaint on behalf of Warden Williams on or before **September 7, 2012.**

5.      In the event the Attorney General will not accept service on behalf of Warden Williams, it shall file a notice under seal listing Warden Williams' last known address on or before **September 7, 2012**.

6.      If Plaintiff chooses to file a second amended complaint, the court will screen it pursuant to 28 U.S.C. § 1915A and direct the Attorney General to answer within a time certain if it finds Plaintiff has stated claim(s) upon which relief can be granted, and the Attorney General need not answer the Amended Complaint.  If Plaintiff chooses not to file a second amended complaint, the Attorney General shall answer the Amended Complaint no later than **September 14, 2012.**

**IT IS RECOMMENDED:**

1.      Plaintiff's claim against Warden Williams for retaliation under the First Amendment be DISMISSED without leave to amend.

2.      Plaintiff's claim against Warden Williams for a Fourteenth Amendment due process violation related to the warden's failure to mail a grievance to the Office of the Inspector General be DISMISSED without leave to amend.

Dated this 7th day of August, 2012.


PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE


**NOTICE**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court.  Pursuant to Local Rule of Practice (LR) IB 3-2(a), any party wishing to object to the findings and recommendations of a magistrate judge shall file and serve *specific written objections* together with points and authorities in support of those objections, within fourteen days of the date of service of the findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). The points and authorities filed in support of the specific written objections are subject to the page limitations found in LR 7-4.